UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JERRY MCNEILL | CIVIL ACTION |
| VERSUS | NO. 21-1431 |
| OTTO CANDIES, LLC | SECTION: "J"(5) |

**ORDER & REASONS**

Before the Court are a *Motion for Summary Judgment* **(Rec. Doc. 19)** filed by Defendant, Otto Candies, LLC ("Otto Candies") and an opposition (Rec. Doc. 21), filed by Plaintiff Jerry McNeill. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds the motion should be **GRANTED.**

**FACTS AND PROCEDURAL BACKGROUND**

This litigation arises from injuries allegedly sustained by Plaintiff on August 16, 2018 while working as a mate aboard the M/V ROSS CANDIES, which was owned and operated by Defendant, Otto Candies. Plaintiff worked as a seaman for Otto Candies for 22 years, and he alleges he was injured while securing the M/V Ross Candies using mooring lines. At the time of his injury, the M/V ROSS CANDIES was out of service and tied to a dock in Port Fourchon, Louisiana. Previously, on May 9, 2018, the U.S. Coast Guard authorized the vessel to reduce its crew size to four crewmembers because the vessel was out of service.

At approximately 9:00 am on August 16, 2018, the M/V ROSS CANDIES shifted berths in Port Fourchon to accommodate an incoming vessel. The mooring lines were wet because it had rained earlier in the morning, and they were initially

removed without incident to shift the vessel's berth in port. Once the vessel was in its new location, a deckhand disembarked to tie the vessel down. Plaintiff was tasked with feeding the mooring line over the side of the ship so that the deckhand could secure it to the dock. Plaintiff proceeded to unspool the mooring from the wench and stood by the bulwarks to assist in pushing the mooring line overboard.

While performing this task, Plaintiff felt a pain in his abdomen, around the site of a prior hernia repair. He subsequently discovered that the surgical mesh that had been installed at the site of his prior hernia repair had dislodged. As a result, Plaintiff had a second surgery in which surgical mesh was again installed at the site of the hernia. Otto Candies paid for this surgery as well as related medical costs, as part of its maintenance-and-cure obligation.

After both of his hernia surgeries, the surgeon advised Plaintiff not to lift more than 40 pounds. Following his second surgery, he has complied with his restrictions and has not reported further problems. However, Plaintiff admitted to not complying with the limitations imposed after his initial surgery.

Plaintiff filed suit against Otto Candies on July 28, 2021, asserting negligence and unseaworthiness claims under the Jones Act and general maritime law. On October 18, 2022, Otto Candies filed the instant motion for summary judgment. The motion is before the Court on the briefs and without oral argument.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer

3

that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

Defendant argues that Plaintiff's unseaworthiness claim fails as a matter of law because he lacks evidence that the vessel, its gear, or its crew were deficient or otherwise defective. (Rec. Doc. 19-1, at 6). Specifically, Defendant argues that, because the Coast Guard approved the out-of-service vessel's use of a four-person crew, and there were five crewmembers aboard at the time of Plaintiff's injury, the vessel was not undermanned. *Id.* at 7-8. Defendant also contends that Plaintiff lacks evidence of Defendant's negligence and points to Plaintiff's own testimony that there was nothing wrong with the vessel and that neither the captain nor crew did anything wrong that contributed to his injury. *Id.* at 8.

4

In response, Plaintiff points to the vessel captain's initial injury report, which stated that Plaintiff's injuries were due to the undermanned vessel and substantial size of the vessel. (Rec. Doc. 21, at 6-7). Plaintiff argues that the captain's later testimony regarding the vessel's seaworthiness contradicts the report and creates a genuine issue of material fact on the unseaworthiness of the M/V ROSS CANDIES. *Id.*

## I.     Jones Act Negligence Claim

Plaintiff claims that his injuries were proximately caused by Defendant's negligent acts, including failure to provide a reasonably safe place to work, failure to provide an adequate crew and procedures, and failure to supervise employees properly. (Rec. Doc. 1, at 3-4). Specifically, Plaintiff claims that, if the vessel captain had woken up an additional crewmember to help Plaintiff pull the mooring line, he would not have been injured. (Rec. Doc. 21-4, at 2). Defendant argues that Plaintiff lacks evidence of negligence, and his own testimony contradicts his argument. (Rec. Doc. 19-1, at 8).

Under the Jones Act, 46 U.S.C. § 30104, a seaman's employer is liable for damages if the employer's negligence caused the seaman's injury, in whole or in part. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997) (en banc). A Jones Act employer has the duty to provide his seaman employees with a reasonably safe place to work. *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989).

However, this standard of care does not hold employers to a higher duty of care than required under ordinary negligence. *See Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 339 (5th Cir.1997). This duty is simply one of ordinary prudence under the circumstances. *Id.* A seaman is held to the standard of the reasonable seaman in like circumstances. *Underwood v. Parker Towing Co.*, No. CV 19-14038, 2021 WL 3077367, at *4 (E.D. La. July 21, 2021), *aff'd sub nom. Underwood v. Parker Towing Co., Inc.*, No. 21-30531, 2022 WL 1553527 (5th Cir. May 17, 2022) (citing *Gautreaux*, 107 F.3d at 339) (explaining that the circumstances include the employee's reliance on his employer to provide a safe working environment, the seaman's experience, training, or education).

"Where a plaintiff was trained in safe lifting techniques, is performing a one-man task, elects to perform a task without assistance that is available to him, and fails to identify a negligent act on the part of his employer, there is no Jones Act liability." *Underwood*, No. CV 19-14038, 2021 WL 3077367, at *6 (citing numerous cases granting summary judgment where the plaintiff failed to seek assistance and opted to perform the task anyway). For example, in *Domingue v. Offshore Service Vessels, LLC*, summary judgment was granted in favor of the Defendant on a Jones Act claim where the evidence demonstrated that Plaintiff was required to take a safety class and had the opportunity to ask for assistance but chose not to do so. 2009 WL 3254147 (E.D. La. Oct 7, 2009); *see also Henderson v. T&M Boat Rentals, LLC*,

No. 17-2042, 2018 WL 3819930, at *6-7 (E.D. La. Aug. 9, 2018) (granting defendants' motion for summary judgment dismissing the plaintiff's Jones Act and unseaworthiness claims, finding no evidence of defendants' negligence; the plaintiff offered no evidence to show that the indisputably one-man job of lifting a 40- to 50-pound partially submerged cable constituted an unsafe condition). Similarly, in *Bush v. Keystone Shipping, Inc.*, Plaintiff alleged that he was injured as a result of his employer's failure to provide a safe workplace because he was injured while carrying lumber as part of his assigned responsibility to build a crate. 1999 WL 280413 (E.D. La. May 3, 1999). At trial, the court denied Plaintiff's Jones Act claims because the employer had trained the plaintiff to ask for additional help in carrying heavy objects. *Id.* at *4; *but see Alvarado v. Diamond Offshore Mgmt. Co.*, No. CIV.A. 11-25, 2011 WL 4915543 (E.D. La. Oct. 17, 2011) (denying summary judgment because of the plaintiff's assertion that his employer failed to properly train him in safer lifting methods that could have prevented his injuries).

In the present case, Plaintiff offers no evidence to show that the task that injured him was more than a one-man job. Plaintiff bases his Jones Act negligence claims on the allegations that: Defendant failed to exercise ordinary prudence while docking the M/V Ross Candies; the vessel master in control of the M/V Ross Candies breached his duties by allowing Plaintiff to secure the mooring lines alone; and had the vessel master exercised ordinary prudence under the circumstances, Plaintiff

7

would not have been injured. However, McNeill's own deposition testimony contradicts these allegations, having testified in pertinent part that "I felt confident enough I had moved the vessel, I didn't feel I needed any help." *See* (Rec. Doc. 19-2; "McNeill Deposition," at 53). When asked whether he had made any attempts to ask for help, McNeill testified "I did not" and stated "[d]idn't feel like I needed it. I felt confident." *Id*. at 53-54. When asked who he would have asked for help had he needed it, McNeill responded:

> "I would have told the captain, 'Go wake somebody else up, or call somebody.' I would just say, 'Hold the vessel there,' and I would go wake somebody up. But I didn't feel like I needed that, I was confident. We had moved the vessel, I didn't feel like I needed any help."

*Id*. at 54. Moreover, Plaintiff responded in the affirmative when asked whether picking up two to three feet of mooring line to lay overboard was a job fit for one person. *See id*. at 86.

With regard to Otto Candies's negligent acts, Plaintiff conceded that the crew followed "normal procedure" and acknowledged that there was no wrongdoing on the part of the captain or crew. *See id*. at 83. When asked whether he thought Captain Horn had done anything wrong in connection with his injury McNeill testified in pertinent part, "No, I think he's just – he was doing his job. He was up there running the vessel just like he was supposed to be." *See id*. Furthermore, when asked whether other crew members did anything wrong to contribute to his injuries, McNeill testified "No, I was up there by myself on the bow." *See id*. In fact, Plaintiff even went

8

as far as agreeing that Captain Horn was a good, safety conscious captain and when asked whether he looked out for his crew, responded in the affirmative stating "[y]es, we always had safety meetings." *See id.* at 55. McNeill not only believed that Otto Candies was a safe place to work, but was of the opinion that the work he did was well within his competency and that there was no problem with supervision. *See id.* at 113-114, 123 ("I felt confident doing the job, yes, I think the procedure was just fine"). McNeill also acknowledged that Otto Candies complied with the four-person crew complement required by the U.S. Coast Guard while the vessel was out of service. *See id.* at 112-113.

Considering the evidence, especially Plaintiff's deposition testimony, applicable case law, as well as the Jones Act negligence standard, the Court finds that Plaintiff offered no evidence that Defendant was negligent nor that Defendant's alleged negligence caused his injury. Plaintiff is an experienced seaman, and he had completed the mooring line task numerous times. Plaintiff chose to move the mooring lines and, by his own admission, stated that despite finding the lines heavier due to the rain, felt confident in his abilities to move the line and did not ask for assistance. For the foregoing reasons, the Court finds that a reasonable jury could not return a verdict for Plaintiff on his negligence claim.

**II.     Unseaworthiness Claim**

Plaintiff claims that the vessel was unseaworthy for lack of an adequate crew, as evidenced by the accident report from the day of his injury. However, Defendant argues that Plaintiffs' own deposition testimony contradicts this claim, and the Coast Guard's approval of a reduced crew shows that Plaintiff's unseaworthiness claim fails as a matter of law.

A ship owner or operator owes a duty to furnish a seaworthy vessel to members of the vessel's crew. *The Osceola*, 189 U.S. 158 (1903); *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960). Unseaworthiness may arise from defective gear, disrepair, or an unfit crew. *Usner v. Luckenbach Overseas Corp.*, 91 S.Ct. 514, 517 (1971). The duty of seaworthiness represents only a duty "to furnish a vessel and appurtenances reasonably fit for their intended use." *Mitchel*, 362 U.S. at 550. A ship owner, however, is not "obligated to furnish an accident-free ship." *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 604 (5th Cir. 2007) (quoting *Mitchell*, 362 U.S. at 550). For a vessel to be deemed unseaworthy, a seaman must first establish a causal connection between his injury and the breach of duty which rendered the vessel unseaworthy. *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001). The standard required to prove causation for unseaworthiness is stricter than for a Jones Act claim of negligence. *Comeaux v. T.L. James & Co. Inc.*, 702 F.2d 1023, 1025 (5th Cir. 1983). Thus, causation in unseaworthiness requires a showing that the unseaworthy condition "played a substantial part in bringing about or actually causing the injury

10

and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Phillips v. Western Co. of North America*, 953 F.2d 923, 928 (5th Cir. 1992).

In *Pallis v. United States*, the Fifth Circuit affirmed the district court's denial of a seaman's unseaworthiness claim, reasoning that the number of crew available for assisting the plaintiff was not the cause of plaintiff's injuries. *See* 369 Fed. App'x 538, 543-44 (5th Cir. 2010). In that case, the district court found that the plaintiff should have waited for additional assistance, and this miscommunication was the proximate cause of his injury. *Id.* Similarly, in *Bush*, the plaintiff's unseaworthiness claim involved a vessel alleged to be undermanned or containing an insufficient crew. *See* 1999 WL 280413 at *1. There, the plaintiff testified both that he did not feel he needed help at any time and also that he knew a request for help would be futile because others would be too busy. *Id.* at *4. Thus, the Court denied the plaintiff's unseaworthiness claims, holding that the vessel was not unseaworthy "by virtue of an inadequate or undermanned crew or inadequate equipment." *Id.*

Here, by Plaintiff's own admission, there was nothing wrong with the vessel which contributed to Plaintiff's injury. *See* (Rec. Doc. 19-2; "McNeill Deposition," at 48) (Q: "So there's nothing wrong with the boat itself that you believe contributed to your accident is that fair?"// A "That's fair."). Plaintiff also claims that the lack of a full crew rendered the vessel unseaworthy. Specifically, Plaintiff points to the

11

"Injury/Illness Report" that vessel master Bobby Horn completed after the incident. (Rec. Doc. 21-2). The report states, in the section labelled "Action Plan to Prevent Recurrence:" "Due to down manned vessel, only had 3 POB up, will have to awake night POB prior in the future." *Id.* at 2. However, Mr. Horn testified that he knew when he prepared the report that somebody was assisting Plaintiff, and he should not have written the report like that. (Rec. Doc. 21-3, at 4). He also testified that Plaintiff's task that morning was a one-man job. *Id.*

Further, as discussed above, Plaintiff agreed that a full crew was not necessary for him to carry out his assigned task of moving the mooring line while shifting berths. Plaintiff previously described the task as a one-man job, for which he could have asked for assistance and yet, chose not to do so. Finally, the U.S. Coast guard approved a reduced crew complement for the vessel while it was out of service and docked in Port Fourchon. *See* (Rec. Doc. 19-3). Thus, the Court finds that the vessel was not undermanned.

Finally, Plaintiff's expert, Captain William Boyce stated that regardless of the number of crew members, the vessel was deficient for the lack of deckhands. However, Defendant's expert Admiral John Nadeau explained that the crew members aboard the vessel in fact maintained licenses including and exceeding the qualifications of deckhands. *See* (Rec. Doc. 19-4, at 7-8); *see also* USCG Marine Safety Manual, Vol. III ("Marine Industry Personnel"), Part A(3)(1). Still, by Plaintiff's own admission, a

12

full crew was simply not necessary for Plaintiff to complete his assigned task, nor was the lack thereof the cause of his injuries. Considering Plaintiff's lack of evidence that would render the vessel unseaworthy, Defendant is entitled to judgment as a matter of law on Plaintiff's unseaworthiness claim.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the *Motion for Summary Judgment* **(Rec. Doc. 19)** filed by Defendant Otto Candies, LLC is **GRANTED**, and Plaintiff's claims are dismissed with prejudice.

**IT IS FURTHER ORDERED** that the *Unopposed Motion to Continue Pre-Trial Conference* **(Rec. Doc. 22)** filed by Plaintiff is **DENIED as moot.**

New Orleans, Louisiana this 15th day of November, 2022.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

13